Alright, this court is now in session. Please be seated. Ms. Kirk, will you call the next case? Case No. 315-0326, People of the State of Illinois, athlete by Justin Nicolosi v. Lily Flemings, applied by Pamela Rubio. Good afternoon, Your Honors. I'd like to first address one technical issue. I realized this morning that the electronic copy of the opening brief that I filed with this court is missing page 16. A physical copy has been inserted into all the copies in this courthouse as of this morning. I apologize for the error. May it please the court. On a summer afternoon, Lily Flemings and his friend, Wayne Jones, were standing on the stairs of a public housing complex. They were doing nothing suspicious and no calls of recent criminal activity had been received by the police. Nonetheless, when Sgt. Cardwell saw them standing on the stairs, he decided to investigate. But before doing so, he called four backup officers and set up a meeting at which they strategized how best to approach these two men for the express purpose of preventing them from fleeing. The four backup officers set up a perimeter in squad cars surrounding the apartment building while Sgt. Cardwell approached on foot and effectively cornered Lily Flemings and Wayne Jones in the stairwell. This police conduct was not a consensual police encounter, but rather a seizure unsupported by reasonable suspicion. Law enforcement does not violate Fourth Amendment principles against unreasonable searches and seizures by merely approaching a person and questioning them. But when a person's freedom of movement is restrained by physical force or show of authority, he is seized within the meaning of the Fourth Amendment and such seizure must be supported by either probable cause or reasonable suspicion. A show of authority amounts to a seizure when a reasonable person in the same circumstances would not feel free to go about his business. Here, no reasonable person would feel free to leave or terminate the police encounter. As Lily testified at the hearing... This evidence wasn't presented at the motion to suppress, was it? Some of the evidence was presented at the motion hearing. At the motion hearing, it was presented that Sgt. Cardwell had called the backup officers, had met with them, and had discussed setting up a perimeter for the purpose of preventing flight. What was added at the trial, which we are alleging resulted in a claim of ineffective assistance of counsel, was that Sgt. Cardwell expressly explained at the trial that he took a safety position in front of the defendants who were effectively stuck in the stairwell of this apartment building, blocking them. Also, there were a few additional details that were brought out at the trial, mainly that one of the backup officers was in full uniform and that the squad cars were marked squad cars. During the trial, these pieces of evidence came out and we are alleging on appeal that it was trial counsel's ineffectiveness that resulted in her not asking to reopen the motion to suppress at that point. This was evidence that would have been supportive of the motion, and yet the record suggests that counsel erroneously believed that the issue was res judicata and that she could not ask to reopen the motion, which is false. The state has conceded that was an error. The issue at hand on appeal is whether it resulted in prejudice. Because counsel's ineffectiveness rests on whether or not this court finds that the evidence should have been suppressed and that counsel's failure to present this evidence would lead to a finding that the motion should have been granted. The issue boils down to the same thing, whether this evidence should have been, if it had been presented, whether at trial or at the motion hearing, whether this evidence supports a finding that the trial court should have granted the motion to suppress. With respect to, there was some testimony about the apartment owners, or whether it was the public, asked the police to arrest any trespassers and that stuff. If you have a basis just at least to inquire as to whether they belong there, stop them, and even if that's a seizure, not to leave, hey, I want to talk to you, what are you doing here? What your Honor is referring to is a trespass agreement that was entered between the owner of the housing project and the Joliet Police Department. There was some testimony at the hearing and again at trial about this trespass agreement. Although many of the details weren't brought out, what we do know is that the owner entered into this agreement with the police department. But appellate courts have consistently held that a trespass agreement only allows the police to enter the premises, the owner gives the police the permission to enter the premises to inquire and approach someone. It does not give the police the authority to seize them without reasonable suspicions. The same constitutional guarantees against unreasonable searches and seizures apply regardless of whether a trespass agreement existed or not. You can't contract away someone else's Fourth Amendment rights. And the officers at some point told him, you're under arrest for trespassing, and it turns out that his some friend, not blood relative, but something like that. I believe it was Shasha who had later been murdered. So he was there apparently visiting an acquaintance, friend, god sister, which is a term I've never heard of. But at any rate, he said he had a reason to be there and was there with the permission of the god sister, right? Right. Well, I think that the issue here is when the seizure occurred. We're arguing that the seizure occurred when the police swarmed the apartment building and asserted their authority so that a reasonable person would not feel free that they could leave the situation. They then approached him and asked him some questions, which led to the officer believing that they were lying. Well, a Terry stop is a seizure, right? Right. And so they could do that, but they didn't search him until after the arrest. Well, they can't do a Terry stop without reasonable suspicion. So we're saying that they didn't have reasonable suspicion from the get-go. They seized him. Then they did the questioning, which was already illegal because of the illegal seizure. And if they had approached them in a different manner and not swarmed with marked squad cars and not taken a safety position that had the effect of blocking them, if they had just approached them and said, hey, can we ask you some questions? Are you here? Are you on this property legally? Who are you here to visit? Then maybe the outcome of, you know, maybe the argument would be different. And maybe the officer would have a reasonable basis to say, I don't really believe. Once the questions were answered, then the officer could decide, well, that was, you know, these are shady answers or whatever. But we don't even get there because before the questioning commences, the police have already effectuated an illegal seizure. But, you know, the fact that there was a trespass agreement, the fact that there was a no trespassing sign, does not give the officers particularized reasonable suspicion that this person was committing a crime. And the state didn't argue that. They said that it, they didn't argue that the police were effectuating a terrorist act. They said it was just a consensual encounter, right, in the trial court. So they were saying that they were not, they didn't have reasonable suspicion at that time. Right. They are not contesting that there was no reasonable suspicion upon approaching the defendants. They're saying that then once the questioning began, then there was enough suspicion to arrest them for trespass. And then the search was incident to the arrest for trespass. But there... Do we know what the trespass agreement says? There is nothing in the record specifically about the contents of the trespass agreement. There was some allusion to maybe terms that allow for passes for visitors, but the trial court limited the questioning as it related to the content of the trespass agreement over defense counsel's objection. So it's unclear exactly what the trespass agreement said, other than it gave the police the permission to enter the premises, which, you know, police don't really need the trespass agreement to do that anyway if they suspect that a crime is being committed on that property. So I don't think that the existence of the trespass agreement really changes the analysis in any way in this case. You know, it really just boils down to whether there was reasonable suspicion to approach and whether the officer's actions in this case from the get-go was... could be interpreted by a reasonable person as being a seizure. And based on the fact that the officers, like I said, swarmed the apartment building, you know, had already had in their minds that they wanted to ensure that these two people weren't fleeing, approached on foot, startled them, and then used the being startled as an improper basis to suspect that they were doing something wrong. You know, they had cuffs on. You know, at least one officer was in full uniform. We know the cars were marked. According to Willie Flemings at the hearing, he testified that he and his friend were having a cigarette on the stairs and that, you know, five to six officers approached him and said, don't move, we're arresting you for trespass. And the state didn't present any evidence to dispute that. They presented evidence from Sergeant Cardwell, who didn't deny that he made those statements. He didn't say that he did. But he said, you know, he admitted he had met with the other officers for the intent of ensuring that they didn't flee. Was there any testimony from the police as to what they considered to be their probable cause to arrest these folks for trespass? Well, they had done a pat-down, and they did a search incident. Well, they arrested him for trespass. They cuffed him, and then a search incident to arrest led to the- But before they arrested them, did they say what was their basis? Was there any testimony as to what their basis was for the trespass arrest? Right. Well, the time frame is a little unclear, but I think according to Sergeant Cardwell, he approached, he asked him some questions, and they thought that the questions were not being answered honestly. Now, I don't really know how he gets to that conclusion, but I think, you know, he said that he used the trespass agreement and the fact that there was some suspicious- I'm sorry, some criminal activity that had occurred weeks prior at the same location as the basis for suspicion to approach. And then when he asked him some questions, I think he asked him, you know, do you know who lives here? And it was not very fleshed out what the conversation was between Sergeant Cardwell and Willie, but I think it was at the hearing that he said that he might have knocked on one of the doors to see if the God sister was home. And Willie had said she wasn't home, which was why he was waiting outside. So I think that, you know, he was never charged with trespass, so I think that that was the basis that the officer used to place him in cuffs and then search him, and then he was ultimately charged with the possession of the narcotic on him. But from the start, the officer's goal was clear. He wanted to approach Willie and Duane for the purpose of stopping them, not letting them go, and, you know, making sure that they- asking them were they allowed to be there, and, you know, made a judgment call that he didn't believe him, so then he cuffed him and the arrest result, you know, the search incident to arrest resulted. So from the very get-go, the police had no reason to believe that these two men were doing anything illegal. And even after they questioned him, I don't believe that they had enough to find that he was committing the crime of trespass. For trespass, you have to have not only an entry on property, but an entry without permission. And so, you know, whether or not the police believed his story, I guess, was the reason why he was cuffed and then searched. You know, the police officer's actions in this case are very similar to vehicle stops, where the doors of the vehicle are actually blocked by someone. And some of the factors to consider are whether a defendant is boxed in, whether they're, you know, circled by officers, whether the officers show force, whether they're armed. We don't have evidence of whether or not they're armed in this case, but we do know that at least Sergeant Hardwell had cuffs on him. And so for those reasons, I think that it's- that any reasonable person would not feel free that they could terminate this police encounter from the very start of when the officers swarmed in and approached. And so because that was a seizure, it had to have been supported by reasonable suspicion, which clearly did not exist in this case. Like I said, the trespass agreement doesn't create reasonable suspicion. The no trespass signs, the prior criminal conduct, the instance that had occurred weeks prior, none of that was tied to Willie or Dwayne. They had no calls of recent criminal activity involving men matching the description of Dwayne or Willie. There's no reason to believe that these two men weren't allowed to just be standing there. And for that reason, the trial court erred in denying the motion to quash the arrest in this case. In fact, the trial court granted the state's motion for directed verdict on the motion to quash and should have granted the motion. And like I said earlier, any of the evidence that came in at trial can be considered by this court because it all leads to the same question, whether or not this motion would have been granted with the additional evidence. And so if the court finds that counsel was ineffective for failing to present this evidence, it's because this court believes the evidence supports a finding of suppression. And so for that reason, we're asking for an outright reversal rather than an unnecessary remand for a new trial with new counsel. So if the court has no further questions, we ask for a reversal of Willie Fleming's conviction. Thank you. Commissioner Pelosi. Good afternoon, Your Honors. May it please the court, counsel. Regarding the last thing that counsel said, and I think the issue of ineffective assistance muddies the waters here a little bit, but whether this court can consider evidence and testimony that was elicited at trial but wasn't presented at the hearing on the motion, the Supreme Court has been pretty clear that when a party is attempting to support the affirmation of a or the denial of a motion to suppress below, they can use information elicited at trial because, in essence, that's basically just a harmless error argument. They're saying that X amount of evidence was presented before trial, and then if the motion to suppress was denied, then anything that was elicited at trial that a party such as myself is using to support it would basically just be cumulative. It would just be more than what was presented before. Basically, it would be harmless. But the Supreme Court says that a party that is trying to use evidence presented at trial to overrule the trial judge's denial of a motion to suppress, that is improper because the motion to suppress could have been renewed at some point during trial after trial. And that's the defendant's argument, is that counsel is ineffective for failing to do what you just suggested. Sure. And so that's why I was just acknowledging that the procedure of this case seems to be a little odd, but whether this court is going to consider that evidence is up to the court. And the people would submit, as we discussed in our brief, that even if this court were to discuss that evidence, the people would submit that nothing that came out at trial is all that significant in relation to whether or not this court should affirm the trial judge's denial of the motion to suppress. And the people would submit, of course, that this court should affirm that pretrial ruling. I think it's important to note the standards of reviewing this case. The trial judge's factual findings can only be overturned if they are against the manifest weight of the evidence. And the people would submit that the facts that the trial judge found in this case are not against the manifest weight of the evidence. Trial judge found that, and I think there's no debate here, that the officers had the ability to approach the defendant and Mr. Counsel stated kind of right off the bat that an officer can approach people and ask them questions if they're willing to listen. But in addition, we have, of course, the trespass agreement that's been discussed and the fact that there was a murder at this apartment complex very recently, and there were other crime, narcotics activity, and gun issues that occurred at this apartment complex that Sergeant Hardwell knew about before August 1, 2014. With all that having been said, no problem with him approaching the defendant. The people would submit that based on those factors and the trespass agreement, the officer had the ability to inquire and figure out what these men were doing there, regardless of whether or not they were openly committing any crime other than trespassing. The officer had the ability to investigate a trespass, and that's what he was doing. He asked them questions, and he found that they were evasive and they didn't give details about what they were doing at this location. One of the men, Hardwell testified, did not give his name, and I think the record would be pretty clear that that was the defendant, because another officer testified at trial that the defendant kept giving him names that would not come up in the system. And it was only after another officer came up with the defendant's ID card that they finally figured out who the defendant was. This was back at the station, so I think it's pretty strong support that the defendant was the one who was not giving his name when speaking with Officer Hardwell at the apartment complex. And they didn't give details about what they were doing there, according to Sergeant Hardwell. At trial, he testified that the defendant told him that he was visiting somebody at the apartment complex. They went to knock on the door. There was nobody there. So, obviously, if he's visiting someone, they would probably be there, or else why would they be there? The defendant's counsel said that's why they were outside, because she wasn't home? I'm just referring to the sergeant's trial testimony when he said that they told him that they were visiting something. Visiting somebody. I'm just referring to the testimony. But, again, back to the standard of review here. We can only overturn the trial judge's factual findings if they are against the manifest weight of the evidence. And what the trial judge considered at the pre-trial hearing was an officer who approached these men to ask them about whether or not they had a reason to be on this property. He didn't get a proper name, and he didn't receive any details about why they were there, and that's why he arrested them. Was he initially, I mean, when he first walked up, was he initially by himself? He was. When he first walked up, yes. He testified that he called the other officers over after he walked over. But the timeline is a little fuzzy. It wasn't flushed out all that thoroughly. But he testified that he was by himself, but that he called... I actually have, I think I have it right. One second, Your Honor. On cross-examination at trial, Sergeant Cardwell, he testified he called in four officers after he approached the defendant and the other man. That's page 195 of the trial transcript. But for all intents and purposes, it seems to be that the officers came over before kind of completely flushing out all the issues. Because I believe there was also testimony that they separated the two men while they were talking to them, just to... Because they were being evasive and they weren't giving details about what they were doing there and who they were, they separated them. And to try and get to the bottom of those issues, because that was the only reason that the sergeant and the officers went up to these men, is because of the trespassing issue. So the people would submit that the trial judge, his factual findings, that the trespass agreement let them investigate, and that upon their investigation, the officers found men with differing stories that couldn't explain why they were there. That's why the trial judge denied the defendant's motion to suppress. And because I think those findings are supported by this record, this court should affirm the trial judge's denial of the defendant's motion to suppress. If there are any other questions, I'd be happy to answer them. Thank you. Thank you, Mr. Napolosi. Ms. Rubio? Just a few more points. With respect to the evidence presented at the trial, first I'd like to note that counsel is also referring to the facts at the trial. And also I think that it's important for this court to consider them, but even if this court finds that it's improper for it to consider the facts at trial, there's sufficient evidence presented at the motion to quash to overturn the trial court's conclusion that this conduct was supported by, that it was permissible conduct and that the arrest was proper. The trial court's findings were actually based on the trespass agreement. And according to the law, the trespass agreement does not support officers' conduct in conducting a seizure. And so therefore, it is against the manifest way of the evidence, both factually, and it's both factually incorrect and legally incorrect, that the trespass agreement could support the officers' conduct in this case alone. And that's essentially what the trial court found, that the officers were entitled to walk up to him, to stop him, and when the questions resulted in some suspicious answers, that they were allowed to arrest him. And the seizure in this case went far beyond just merely asking a few questions. And in terms of the factual dispute, again, counsel's right that it's a little bit unclear about the timing of when all the officers approached, but some of the backup officers testified at the trial that they saw Officer Cardwell and his partner speaking to the men as they were approaching. And so it seemed like all of this was kind of happening simultaneously. And so the reason for that is that the moment of attack that the police created before they even approached the men occurred, I think, a half a block away in a parking lot, and then, you know, it was all kind of orchestrated simultaneously that Cardwell would come up upon them on foot while the rest of the officers set up the perimeter, and then he called them at around the same time he was talking to the men. So for all of those reasons, that was the seizure. It's not a fact that is dispositive, but it can be looked at in determining the mood of the situation and how a reasonable person would interpret the officer's actions if they, you know, did admit they subjectively ran in there, you know, with that intent in mind, it could affect the way a reasonable person would interpret their conduct. And so for that reason, I think that it is important to note, but like Your Honor noted, it's not a dispositive fact. So for those reasons, we ask that this court reverse. Thank you. Thank you, Your Honor.